(81 App. Div. 512.)

### MORRIS v. HOFFERBERTH.

(Supreme Court, Appellate Division, Fourth Department.   March 10, 1903.)

1. SALE—PAYMENT—SUFFICIENCY OF EVIDENCE.
    Evidence in an action to recover for lumber sold to defendant examined, and *held* to sustain a finding that plaintiff had been paid therefor.
    Hiscock, J., dissenting.

Appeal from Trial Term, Cattaraugus County.

Action by Charles W. Morris against Charles Hofferberth to recover for goods, wares, and merchandise.   From a judgment for defendant and an order denying a motion for a new trial, plaintiff appeals.   Affirmed.

The action was commenced in October, 1901, to recover for goods, wares, and merchandise sold and delivered to the defendant during the months of April and May, 1901, of the alleged value and agreed price of $2,719.34.

Argued before ADAMS, P. J., and McLENNAN, SPRING, HISCOCK, and NASH, JJ.

Allen J. Hastings, for appellant.
J. H. Waring, for respondent.

McLENNAN, J.   Early in the year 1901 the plaintiff purchased from one William F. Upton, of the city of New York, for the sum of about $9,000, a lumber business located in 138th street, in said city. It consisted of lumber of various kinds, the use of a yard where it was stored, horses and wagons for delivering the same, an office, and all other facilities for conducting such business.   Immediately on making such purchase the plaintiff put in charge of the business one H. L. Garwood, to manage and run the same as his agent.   He was authorized to sell the lumber at such price and upon such terms as he saw fit, and to receive cash or the checks of any purchaser in pay-

ment for the same. Garwood was to receive for conducting such business and disposing of the lumber one-half of the net profits arising from the same. He was authorized to employ such help or assistance as was necessary, and to pay for the same out of the avails of the business, yielding or accounting to the plaintiff for only one-half of the net profits of the enterprise. By the arrangement made between the plaintiff and Garwood no agreement was made in respect to what should be done, and the rights of the respective parties, in case a loss resulted from the management of the business. The plaintiff testified, in substance, that the question of loss was not mentioned, because they expected a profit would be made. To facilitate the conduct of the business by Garwood, the plaintiff furnished to him his stationery and bill heads, in which he (Garwood) was designated as plaintiff's agent, and apparently the whole thing was placed in his hands and charge, the plaintiff giving very little personal attention to it. He apparently trusted Garwood implicitly, they having had business relations before, and placed it absolutely within his power to convert to his own use the entire proceeds or avails of the business.

In the regular course of the conduct of the business Garwood, as plaintiff's agent—as is conceded he had a right to do—sold to the defendant about $2,719.34 worth of lumber during the year 1901. The first sale to the defendant, which was made January 24, 1901, amounted to $39.59, and was paid for by the defendant by delivering his check, payable to the order of the plaintiff, to Garwood, and the bill was receipted as paid. The check was sent to the plaintiff, indorsed by him and paid in due course. The rest of the lumber sold to the defendant by Garwood, as agent for the plaintiff, was sold during the months of April and May, 1901, and amounted in the aggregate to about the sum of $2,400. This the defendant paid for, as before, by delivering his check or checks to Garwood, payable to the order of the plaintiff, and Garwood receipted for the payment of such lumber. Such checks Garwood indorsed by writing upon the back thereof, "C. W. Morris. H. L. Garwood." Such checks so indorsed were presented by Garwood at the bank, where they were made payable, and, the defendant having money to his credit at such bank, the same were paid, and in due course were delivered up and surrendered to the defendant by said bank. Garwood, instead of crediting the amount of said checks to plaintiff's account, or paying over the proceeds to him, converted such proceeds to his own use, and left the country. This action is brought to compel the defendant to again pay for the lumber which he purchased from the plaintiff through his agent Garwood.

The only question submitted to the jury by the learned trial court was whether or not Garwood had authority to indorse the checks in plaintiff's name and for and on his behalf. The jury found that the agent had such authority, and we think the evidence amply justifies such finding. It is true the plaintiff testified that no express authority had been given to Garwood to indorse checks made payable to his order, and to receive the proceeds thereof, and, in substance, that Garwood had in fact no authority to indorse such checks by writ-

ing plaintiff's name upon their back. The plaintiff was not a disinterested witness, and therefore his evidence, although not contradicted specifically, was not conclusive. The jury had the right, as was pointed out by the learned trial court, to consider the relations which existed between the plaintiff and his agent in respect to the business in question, as well as the relations which existed between them in respect to former transactions. They had a right to consider the method adopted for the conduct of the business in hand; the fact that Garwood was placed in sole charge; that he had the right not only to make the price, but also to prescribe the terms upon which the lumber could be purchased, whether for cash, by check, or upon credit. The jury also were justified in taking into consideration the fact that the agent Garwood, by the terms of his agency, was authorized to apply the proceeds of the sales made by him to the payment of the expenses incident to the conduct of the business. Considering these and many other circumstances disclosed by the evidence, which might be pointed out, we think the jury were amply justified in finding, as they did, that the agent Garwood in fact had authority to indorse the checks in question by writing plaintiff's name upon their back. If so, it follows as matter of course that the judgment in favor of the defendant should be affirmed.

Having reached the conclusion above indicated upon the facts, we deem it unnecessary to express any opinion upon any other question presented by this appeal.

Judgment affirmed with costs

SPRING, J., concurs.

NASH, J. (concurring). I am of the opinion that the question whether Garwood had the authority to indorse the checks received in settlement of the account for lumber sold to the defendant is one of law arising upon the conceded facts of the case, and not one of direct or express authority conferred upon Garwood by the plaintiff, to be determined as a question of fact. The plaintiff was in fact engaged in the business of conducting a lumber yard, under an agreement with Garwood that the latter should have the entire charge and management of the business, and for his services Garwood was to have one-half of the profits. He was to sell the lumber, defray the expenses of the business, carting, a man to handle the lumber and the inspection of it, and these expenses attending the sale were to be by him taken out of the receipts. He fixed the price of lumber sold to purchasers, and was authorized to give discounts. He settled the accounts for lumber sold and receipted bills; in short, as manager, transacted the entire business. He had authority without the plaintiff's personal supervision to receive and pay out moneys in the transaction of the business. He remitted to the plaintiff by his own and customers' checks, and under their agreement he had the right to retain out of the avails of the sales for his own use such parts thereof as represented his half of the profits.

It seems to me upon this state of facts furnished by the testimony of the plaintiff as a witness upon the trial that the question here

is one of power. If Garwood had authority to receive and disburse moneys in the conduct of the business, he had power to reduce to cash the avails of lumber sold, in whatever form received; that the authority carried with it, or included in it, as an incident, all the powers necessary as means to effectuate the purposes for which it was created. Story on Agency, §§ 97, 58. This, in effect, was the rule applied in the case of Sage v. Burton, 84 Hun, 267, 32 N. Y. Supp. 1122. There it was left to the jury to find whether or not the plaintiff Sage told the defendant, in the presence and hearing of Abbott, the agent, before the transaction in question, that his dealings with the plaintiff's firm must be with Abbott, and, having so found, it was held that the indorsement of the name of the firm by Abbott, upon a check delivered to him by the defendant in settlement of his account, bound the plaintiff; that the payment of the check discharged the defendant from liability to his creditors; that any misappropriation by Abbott was at the risk of the party who set him in motion and put it in his power to perpetrate the wrong. The case of Sage v. Burton was followed in Allen v. Tarrant, 7 App. Div. 172, 40 N. Y. Supp. 114.

The jury having arrived at a correct result, the judgment is right, and should be affirmed.

ADAMS, P. J. (concurring). Upon the uncontroverted evidence in this case it is made to appear that the plaintiff's agent, Garwood, was authorized to settle with parties to whom he had sold lumber by taking their checks in payment therefor. It seems that in January, 1901, he made such a settlement with this defendant, allowing him a discount of 2 per cent. upon the amount of his bill, taking his check in payment of the balance, amounting to $38.80, which check he thereafter forwarded to the plaintiff, who accepted the same without objection. As between Garwood and the defendant the same course was pursued upon each of the subsequent purchases by the latter, and in every instance where a settlement was had Garwood receipted the bill immediately upon the defendant's handing him his check. That the defendant had money in the bank to meet these several checks is beyond all question, for it appears that they were paid upon presentation. Upon one of these checks, drawn upon the New York County National Bank for $1,000, and bearing date the 13th day of April, 1901, the avails of which were obtained and appropriated by Garwood, the plaintiff subsequently lodged a complaint against Garwood in the magistrate's court of the city of New York, wherein he charged him with forgery and larceny of the check, and in his deposition swore that Garwood received the same in payment of lumber purchased by the defendant of Garwood, as the agent of Morris, the complainant. These facts, it seems to me, bring the case clearly within the principle laid down in Sage v. Burton, 84 Hun, 267, 32 N. Y. Supp. 1122, and Allen v. Tarrant & Co., 7 App. Div. 172, 40 N. Y. Supp. 114; and, although the case was submitted to the jury upon a somewhat different theory, I think their conclusion was correct, and should be sustained.

HISCOCK, J. (dissenting). At the time of the occurrences involved in this action the plaintiff was proprietor of a lumber yard in the

city of New York. The immediate practical management thereof was vested in one Garwood as his agent. A quantity of lumber was sold to the defendant, and it is claimed by plaintiff that upwards of $2,400 of the purchase price thereof has never been paid, and it was for the recovery of such sum that this action was brought.

The question whether plaintiff's claim is well founded depends upon the effect which is to be given to the acts of his agent Garwood in receiving from the defendant the latter's checks, payable to the order of the plaintiff, to the amount of such unpaid purchase price, and in thereafter indorsing the same in plaintiff's name and collecting the proceeds thereof.

The evidence was undisputed upon the trial that without plaintiff's direct knowledge or consent his name was indorsed upon the checks by Garwood; that the latter had no express authority to make such indorsement, and that he kept and embezzled the proceeds of the checks so that the money never came into plaintiff's possession, and he never has received actual payment of his claim against the defendant. The latter has never paid the checks, except as they were charged to his account by the bank after having been improperly paid upon the forged indorsements.

No express power having been conferred upon Garwood to indorse checks, defendant sought to find evidence of an implied authority in the general relations existing between him and plaintiff, and the jury was permitted to find in that way that such authority did exist. The question presented to us, whether this finding was authorized, leads to a consideration of the powers which plaintiff, either expressly or by implication, had conferred upon his agent.

It may be broadly stated that plaintiff, who lived away from New York, placed Garwood in general charge of the lumber yard, with power to sell lumber and settle and collect accounts therefor; that bills were furnished for the latter purpose running to plaintiff, and designating Garwood simply as agent; that with the knowledge of plaintiff the latter did collect claims and remit therefor to plaintiff; that prior to the ones involved in this action Garwood never indorsed in plaintiff's name any checks, but sent the same to plaintiff. Garwood was to receive a certain proportion of the profits made in the business, but it was never claimed by the parties or upon the trial that this constituted any partnership or was otherwise than by way of compensation. In fact, the billheads used, as already stated, asserted that plaintiff was the principal and Garwood the agent.

We are therefore led to the inquiry whether a person who employs an agent to transact a specific business for him, and in connection therewith to settle and collect accounts and receive money and checks therefor, is, by virtue of such express authority, invested with the further implied authority to indorse in the name of his principal checks or other negotiable instruments payable to the latter's order. The prevailing opinion holds that this is the law. I am unable and unwilling to concur in that view.

At the outset, reference may be made to what seems to me to be a misapprehension as to the burden of proof which rested upon plaintiff. He testified that he had never authorized Garwood to indorse

paper for him. In connection with such testimony, it is said that plaintiff was not a disinterested witness, and therefore it was for the jury to say whether he testified truthfully upon this subject. I do not think that it rested with plaintiff as a matter of affirmative proof to show that he had not authorized Garwood to make the indorsement, but that rather the burden rested upon defendant of showing that the latter was so authorized. It is too well settled to require any extended discussion that under all ordinary circumstances the drawer of a check or the bank upon which it is drawn must know before honoring it that the indorsement thereon is genuine. Graves v. American Exchange Bank, 17 N. Y. 205; C. N. Bank v. I. & T. Bank, 119 N. Y. 195, 200, 23 N. E. 540.

When it appeared, as it did undisputedly upon the trial, that plaintiff's indorsement upon these checks was not made by himself, but by somebody else, the burden rested upon the defendant, distinctly and unequivocally, of showing that the professed agent acted within the limit of his authority in making it. The burden did not rest upon plaintiff of showing that he did not. This is the simple and ordinary rule where one seeks to bind another through the act of a third party claiming to be an agent. Craighead v. Peterson, 72 N. Y. 279, 283, 28 Am. Rep. 150.

· I pass, therefore, to a consideration of the question as above stated. It is perfectly understood, as a matter of ordinary business observation and experience, that almost the last authority which a man confers upon his agent is the right to bind him by signing or indorsing his name upon negotiable paper. Very naturally men are reluctant to confer upon others an authority which, if misused, may be so injurious as this. I think that the courts have respected and followed the general course of conduct of business men in dealing with this subject, for they have always been slow to infer a power to perform such acts unless it was clearly given or fairly to be implied. The general proposition that an agent who is authorized to collect bills is thereby clothed with the power to indorse his principal's name upon negotiable paper seems to me to be both extreme and dangerous. It may be said that such an agent by making collections in cash has the power to defraud his principal. That is true, but the probability of such results is limited, and may be assumed by an employer, whereas the other right, to take checks, in which large payments are ordinarily made, and indorse them, is much more dangerous. If such a rule is good law, then the ordinary messenger boy of a bank, who is sent out to make collections almost universally paid in checks to the order of his principal, is invested with the power to misappropriate moneys far beyond any understanding which ordinarily prevails in business life.

I think the cases which have been called to our attention establish no such proposition as is stated in the prevailing opinion in this case. It may be conceded that some of them suggest a distinction which might arise in those cases where an agent to settle and collect, taking a check payable to the order of his principal, indorsed it solely and exclusively for collection. Some of them have refrained from stating what might be held in such an instance. It is sufficient to say that

in this case it does not appear that Garwood indorsed the checks which he received from defendant for collection in any ordinary course of business, or that he acted within any apparent scope of his master's business and interest in securing the money upon the checks. Therefore the cases to which I have referred as well as others are authorities against the rule that plaintiff is to be bound by his indorsement. Robinson et al., Trustees, v. Chemical Nat. Bank, 86 N. Y. 404; Holtsinger v. Nat. Corn Exch. Bank, 6 Abb. Prac. (N. S.) 292; Jacoby & Co. v. Payson, 91 Hun, 480, 36 N. Y. Supp. 240; Bernheimer v. Herrman, 44 Hun, 110; Graham et al. v. United States Sav. Institution, 46 Mo. 186; Thomson v. Bank of Brit. No. A., 82 N. Y. 1, 10.

It seems to me that the facts appearing in the case of Robinson et al., Trustees, v. Chemical Nat. Bank, cited supra, are so far similar to those existing in this case that the decision of the court thereupon must be controlling here. One Leonard was a clerk and agent for the collection of rents and other matters. As such he received a check for rent payable to the order of one of his principals. Without authority he indorsed the same in the name of said principal by himself as attorney "for deposit," and also in his own name individually, and the check was thereupon deposited and collected. He procured the proceeds to be placed to his individual credit, and subsequently abstracted them. The court, through Judge Earl, say:

"The authority which Leonard had as agent to collect the rent and transact other business for Beare gave him no legal authority to indorse this ·check, and his indorsement thereof was just as ineffectual to pass any title as if he had forged Beare's name. * * * The rule as derived from these authorities is well expressed by Prof. Parsons as follows: 'An agent's acts in making or transferring negotiable paper (especially if by indorsement) are much restrained. It seems that they can be authorized only by express and direct authority, or by some express power which necessarily implies these acts, because the power cannot be executed without them.' "

Our attention, however, is especially called to the case of Sage v. Burton, 84 Hun, 267, 32 N. Y. Supp. 1122, and of Allen v. Tarrant & Co., 7 App. Div. 172, 40 N. Y. Supp. 114, as requiring a different conclusion.

The former case, like the one at bar, was brought by plaintiffs to recover an alleged balance of indebtedness due from defendant, and the question was as to the effect of a check given by the latter to a constituted agent of plaintiffs, who the jury had a right to find was duly and fully authorized to receive the same in payment of the indebtedness, and who, after he had so received it, improperly indorsed the same and collected the money thereon. A careful examination of this case will disclose that the opinion is largely taken up with the discussion of the question whether the delivery by defendant of his check to plaintiffs' duly authorized agent did not operate as a payment so far as the defendant was concerned, and make it immaterial to him what thereafter became of the check. This discussion did not involve a consideration of the question whether the authority to receive a check in payment of an account implied the right to indorse the principal's name. The court distinctly refrained from passing on this question, saying:

"If it be held that Abbott (the agent) in this transaction was not the alter ego of the plaintiffs, and had no authority to indorse this check, yet, if he was authorized by the plaintiffs to receive this check from the defendant, any misappropriation of its proceeds by him is at the risk of the party who set. him in motion and put it in his power to perpetrate the wrong; such party must suffer, rather than the party who is in no wise accountable for, and has no control of, the perpetration of the wrong."

In the case last cited there was manifestly evidence in the proceedings by the plaintiff against his agent, who had improperly indorsed the check, and in his silence for two years after learning of his act, which permitted a jury to find that he had authorized or· ratified the conduct of his agent.

It is, however, further urged, in substance, and as another theory by which the judgment appealed from may be affirmed, that Garwood was plaintiff's agent to settle and collect bills; that at the time defendant gave the checks in question he had the money in bank to meet them; that their delivery to plaintiff's authorized agent operated as a payment pro tanto of defendant's indebtedness, or, at least, to that extent discharged him from further liability upon his debt, and is a bar to this action upon the original claim.

This doctrine apparently must rest upon one of two propositions. Either the checks were so received as actual payment of the indebtedness that the latter became canceled and discharged, and cannot serve as a basis for this action, or plaintiff, having authorized his agent to· receive the checks, must follow him and them, and cannot further vex, by this litigation or otherwise, the defendant who gave them.

I think there are various objections to an affirmance upon this line. So far as concerns the first proposition involved, it is the well-established rule that an indebtedness is not ordinarily paid or satisfied by the debtor's check, unless the latter itself is paid in due course. If plaintiff himself had received upon his bill for lumber the defendant's. checks in question, the presumption would be that they did not operate as a payment unless they were in fact actually paid. Bradford v. Fox, 38 N. Y. 289; Carroll v. Sweet, 128 N. Y. 19, 27 N. E. 763, 13 L. R. A. 43.

Even if plaintiff had himself received the checks and had given a receipt in payment of his indebtedness to the amount thereof, it would thereafter have been premissible for him to show that the purported payment was by the debtor's own checks, and that the same were not paid and did not operate as a satisfaction of the indebtedness. Bradford v. Fox, supra.

The fact that Garwood, by forgery, procured the avails of the checks, and appropriated them to his own use, does not amount to that actual payment of the debtor's own obligation to his creditor which operates as a discharge of the original indebtedness. It is no. more than as if the checks had been stolen from plaintiff's possession after delivery to him, and the proceeds thereof obtained by fraud, and in which case I apprehend it could not be successfully contended that there was such a payment of the debtor's obligations in due course as. would amount to a discharge of his original indebtedness, for which. they were given.

The cases of Sage v. Burton and of Allen v. Tarrant & Co., supra, which are also referred to as sustaining the contention made in behalf of defendant, that having delivered his checks to plaintiff's agent with money to meet them he was unconcerned in what might thereafter occur with the same, do not seem to be applicable to the facts in this action. Both of the cases referred to, so far as they bear upon this point, were disposed of in part, at least, upon the theory that there was evidence showing that the agent who received the checks in settlement was authorized to indorse and collect them as he did, and that therefore the checks of the debtor received to apply upon an indebtedness having been actually paid in due course operated as a discharge of the same. There is, of course, no doubt about this rule. In the Tarrant Case, as I have already remarked, there was evidence which manifestly entitled a jury to find that the agent who received the checks was authorized to collect and indorse the same, and the Sage Case assumed the same condition to exist.

A chance expression used by plaintiff in the criminal proceedings instituted by him against his agent, in which he refers to defendant's checks as having been given in payment, is urged as proof that they were thus received by the agent with due authority in satisfaction of the claim. The general presumption is the other way, and the most that could be said for the supposed evidence upon this point would be that it created a question of fact to be submitted to the jury. As hereafter suggested, that was not done.

The evidence certainly does not warrant us in affirming the judgment upon the ground that as a matter of law the checks were delivered to Garwood for, and operated as a payment and satisfaction of, the indebtedness sued upon. I therefore pass to the other consideration, which is suggested rather than urged, that defendant, having delivered to plaintiff's agent the checks which were good if presented to the bank, should not be sued, even though plaintiff never received the checks, but the latter should either follow up his agent or proceed against the bank. This argument must rest upon the idea that a principal must be charged with the wrongdoing of his agent, and that an innocent person who has dealt with him must not be allowed to suffer. The facts, however, are not present here which upon such principles constitute a defense to this action. If I am right in my reasoning, plaintiff's indebtedness was not paid by the mere delivery of the checks to his agent, and that he has never collected or received the money thereupon. As a matter of fact, the checks have been passed over to the defendant by the bank which paid them upon forged indorsements. They are not outstanding against the defendant, and the bank has no right to charge them up in his account. The defendant, in the eyes of the law, has never paid or authorized the payment of the checks, and will not be subjected now to any double liability if he pays plaintiff's indebtedness. Again, it is as though the checks had been stolen from or lost by plaintiff after delivery to him, and in which case they would not operate as a cancellation and satisfaction of the indebtedness.

The principles laid down upon the facts appearing in the cases of Bernheimer v. Herrman, 44 Hun, 110, and Thomson v. Bank of

British North America, 82 N. Y. 1, 8, 9, are applicable here, and are thoroughly opposed to an affirmance of the judgment upon the theory just discussed.

There is still another reason why the judgment should not be affirmed upon such ground. The case was not submitted to the jury or disposed of by the trial court upon any such theory. The question submitted to the jury was whether Garwood was authorized to indorse plaintiff's name upon the checks. As I read the requests of plaintiff's counsel and the rulings of the court as found at folios 124 and 127 of the record, the court absolutely and distinctly refused to submit the case upon the theory now urged for sustaining the judgment. I think that it is absolutely essential to the affirmance of the judgment upon this ground that the defendant's checks should have been received by the agent in payment, and that in the view most favorable to the former it was a question of fact which plaintiff was entitled to have submitted to the jury whether they were so received. This was not done, and it would be unjust to defeat plaintiff by sustaining a judgment upon principles entirely different from those upon which it was originally obtained.

I think the judgment and order appealed from should be reversed.