ROSENBERG v. GERMANIA BANK.

(Supreme Court, Appellate Term. June 23, 1904.)

1. CHECKS—FORGED INDORSEMENT—AGENTS—AUTHORITY.
    Plaintiff's general clerk, who was employed to keep books, collect accounts, and make deposits, indorsed the check of a third person payable to plaintiff in plaintiff's name, and procured the money thereon, for which he failed to account, from the barkeeper of a saloon, in accordance with a neighborhood custom. The clerk had never indorsed plaintiff's name to checks for transfer before to plaintiff's knowledge, except in indorsing checks for deposit he had used a rubber stamp reading, "Pay to the Northern National Bank. Joseph Rosenberg," for that purpose. *Held*, that plaintiff was not estopped from denying the validity of the indorsement, or the authority of the clerk to indorse the same, as against a bank paying the check.

2. SAME—INDORSEMENT BY STAMPS.
    The use of a rubber stamp for the purpose of indorsing checks for deposit has been recognized by custom of banks and merchants, and indorsements so made are valid.

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Joseph Rosenberg against the Germania Bank. From a Municipal Court judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and SCOTT, JJ.

Louis I. Frey, for appellant.
Julius Hy. Cohen, for respondent.

MacLEAN, J. Upon oral pleadings were brought these three actions for the conversion of certain checks drawn to the order of the plaintiff and indorsed with his name by another. It is contended that plaintiff is estopped from disputing these indorsements because of circumstances which he knew, or may be assumed to have known. This contention the learned trial justice has sustained, and rendered judgment for the defendant.

The indorsements were made by one Hecht, the plaintiff's general clerk, among whose duties and occupations are enumerated that he kept the books, made out bills and accounts, collected debts, wrote letters, attended to making deposits in the bank. How he receipted bills and accounts is not shown. To letters he signed his employer's name with the addition of "H.," his own initial. For depositing in the bank checks payable to his employer's order, he used a rubber stamp reading: "Pay to the Northern National Bank. Joseph Rosenberg." It is not shown that Hecht ever signed or indorsed a check with plaintiff's name to plaintiff's knowledge, excepting by the stamp for transfer to the plaintiff's bank. It was of frequent occurrence—almost like a practice—in the neighborhood to send out checks to be cashed, particularly on Saturday afternoons, and especially to the liquor stores; one Gerdes' bartender testifying that they cashed checks for as much as $1,500 for different persons on a Saturday. The plaintiff himself sent out checks in that way, he said, not oftener than once in four

weeks, to the liquor store of one Delecker, and he knew that when Delecker had not the money his checks had been taken to Gerdes'. Hecht went out with some of these checks signed by his employer to be cashed. Then he took checks—not drawn by the plaintiff, but customers' checks drawn to the plaintiff's order—had them cashed, credited the accounts as with payments, but did not put the money into the cash or deposit it in the bank. Of such character were those upon which this action is brought—checks of customers to the order of the plaintiff—which checks Hecht backed with his employer's name, and had cashed by Gerdes' bartender. They were then deposited by Gerdes in the bank, here defendant, and collected by the bank in the usual course. Other circumstances were shown of less significance. Rosenberg was seen sometimes at Gerdes' saloon with Hecht. He repeatedly visited and had meals at Hecht's boarding place. Rosenberg had confidence in his general clerk, as is commonly the case; commonly, too, deservedly, for the relative rarity of the betrayal of such confidence is highly creditable to that respectable class in the community, the merchants' clerks, without whose faithfulness business could hardly be carried on by such men as the plaintiff, who, knowing nothing of bookkeeping, must trust somebody.

Not one of the incidents in evidence, nor all combined, make out or imply authority to write the plaintiff's name upon either side of a check. That of which the most is made—provision of and authority to use a stamp for the indorsement of checks for deposit—carried with it only power to do that specific thing under the method familiar, by custom, to every man and woman in this town of affairs enough to have a bank account. That method, in its present prevalence, is novel. Its legality is ancient doctrine. It was settled long ago that a person may be bound by any mark or designation he thinks proper to adopt, providing he intends to bind himself thereby (Brown v. Butchers' & Drovers' Bank, 6 Hill, 443, 41 Am. Dec. 755); and, if the intention to bind by even a mark be shown, inquiry may not be made in court as to whether the person can write his name (Baker v. Dening, 8 Ad. & El. 94). At the beginning of the present practice, not many years ago, banks required of each customer a letter or other paper of request and indemnity. Increase of business to a volume rendering the elder practice impracticable in many cases, especially of cashiers of banks, brought the convenient substitute of a stamp for the written name of the payee into use, until the usage ripened into the custom recognized by the clearing house and its members and by the subtreasury since its affiliation with that institution; savings banks alone, of financial concerns, still standing aloof.

Clamorous assertions that the plaintiff's action under this well defined and recognized custom covers Hecht's forgery of his employer's name avails nothing. As little may it be said that reversal of this judgment and the ruling upon which it rests will endanger the business of banking, of such convenience to the commercial community, by holding that banks act at their peril. Of course, banks, as others, taking paper, in a way act at their peril. Herein a bank is party defendant, but not because of the writing of the employer's name by Hecht, which concerned the bank only because of its guaranty by its customer,

Gerdes, through his indorsement, and who must make that good. Neither of the cases relied upon help the defendant. In one arising upon the extraordinary defalcation of Schuyler, who so startled the commercial community two generations ago (N. Y. & N. H. R. R. Co. v. Schuyler, 34 N. Y. 30), the court held that, where its directors do not direct, a corporation as well as an individual is liable for the acts of a person openly and notoriously held out as the agent, and also placed and recognized as in position to be the author of the corporation's misfortune. In the other (Morris v. Hofferberth, 81 App. Div. 512, 81 N. Y. Supp. 403), besides being between parties very differently situated, the misuse of the check was by a person who signed the name of his principal with the addition of his own, and who was designated as plaintiff's agent on the stationery and billheads furnished by the plaintiff, and who furthermore was authorized to and did manage and conduct the entire business of the plaintiff, an absentee.

The determination of this appeal will establish no novel precedent, but, were that so to be, the court would need more than herein appears to determine that whenever a man, because of insufficient schooling, occupation in his workshop, or other cause, employs a bookkeeper to do his countinghouse work, he thereby exposes himself to such disposition of his funds as his bookkeeper may make under what a bartender or bartenders consider the bookkeeper's authority. The judgment should be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.