(56 Misc. Rep. 645.)

### INNOVATION TRUNK CO. v. PLATT.

(Supreme Court, Appellate Term. December 20, 1907.)

1. TROVER AND CONVERSION—ESSENTIAL ELEMENTS OF CONVERSION.

An essential element of conversion is that plaintiff has a property or ownership in the thing converted or the right of possession at the time of conversion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trover and Conversion, §§ 119–122.]

2. SAME—ACTIONS—EVIDENCE—SUFFICIENCY — FIDUCIARY   RELATION — DEBTOR AND CREDITOR.

Where an officer of a corporation, having no fixed salary, is permitted to draw what money he wants for his needs, and it is charged to him, and on the return of money, which he drew, and loaned to another, applies such money to his personal purposes, including payment of taxes on his father's property, the relation between him and the corporation is that of debtor and creditor, and he is not liable for conversion.

Appeal from City Court of New York, Trial Term.

Action by the Innovation Trunk Company against Arthur C. Platt for conversion. From an order setting aside a verdict for defendant, he appeals. Reversed, and verdict reinstated.

Argued before GILDERSLEEVE, P. J., and McCALL and FORD, JJ.

A. Parker Smith (Robert B. Honeyman, of counsel), for appellant.

Wentworth, Lowenstein & Stern (Louis Lowenstein, of counsel), for respondent.

McCALL, J. This action is for the conversion of the funds of the plaintiff by the defendant. The material facts are not in dispute. One Bonsall was the inventor of a wardrobe trunk. He sought the

aid of Platt, the defendant, to assist him in promoting his business. No agreement as to the wages or salary to be paid to the defendant by plaintiff was made, but the defendant drew from time to time such sums as he might need for his expenses. At times Bonsall made suggestions as to defendant's expenses, arranged for his apartment, introduced him to his tailor, and promised defendant a considerable sum of money when the business was in shape to warrant it. Subsequently, and in March, 1900, the business was incorporated under the name of the plaintiff company; Bonsall either owning or controlling substantially all the stock. The defendant was made the president and the treasurer of the company. There was no change in the manner of transacting the business. Defendant had entire charge and management, and his employment and duties continued exactly as they had under Bonsall individually, with nothing said as to defendant's compensation. It appeared upon the trial, without dispute, that the defendant drew money "for any purpose he needed money for," and each month his drawings were entered up against him, and a statement of the account given to Bonsall. The defendant drew the drafts and checks of the company, and signed them as president and treasurer.

In the summer of 1903 Bonsall was in Europe, and sent for the defendant to come there. Platt arranged with Brown Bros. in New York, and obtained an authorization upon their representative in London, by which arrangement, when Platt drew a draft, the London bankers cashed it for him. They then sent it to Brown Bros. in this city, who sent it to the bank with which plaintiff had its account. This bank paid it, charged it to the plaintiff's account, and the plaintiff then charged the amount of the draft to the defendant's account. While in London, a man named Mumford called upon the defendant. Mumford asked defendant for a loan of $500. The plaintiff had had dealings with Mumford, and at that time was indebted to him in some amount. The defendant thereupon drew a draft for £100 and gave it to Mumford. This draft, after going through the channels indicated above, was paid by the plaintiff and the amount charged to the account of the defendant. Bonsall knew of this loan to Mumford, and told the defendant that it was satisfactory. Upon defendant's return from Europe Mumford paid to the defendant, by a check payable to defendant's order, the amount of this loan. The defendant made use of this money the same as "if I had drawn it from the funds of the corporation." Although the plaintiff claimed in this action that defendant had converted some $1,500 of the plaintiff's money, upon the trial it limited itself to a claim that the facts above stated showed either a conversion by the defendant of the sum of $500, or at least the sum of $100, as it appeared in evidence that the defendant used some portion of the Mumford money to pay taxes upon some property owned by defendant's father, which property was to be given to defendant; his testimony being, "It may have been $100." The jury rendered a verdict for the defendant, which the court set aside, holding, substantially, that a cause of action for conversion was made out against the defendant.

I do not subscribe to this contention. The essential element of conversion is that the plaintiff has a property or ownership in the thing

107 N.Y.S.—52

converted, or the right of possession at the time of conversion. Neither of these elements appear in the facts shown in this case. The only relation existing between the plaintiff and Platt was that of debtor and creditor. This is evidenced by the fact that the money in question was charged to him on the plaintiff's books. The money drawn by the defendant was not received by him in a fiduciary capacity. True, he could be compelled to account for the same; but he was not compelled to return the identical money received by him, even if unaccounted for. "The fiduciary relation exists by reason fiducia, or faith reposed, as where one man intrusts his property to another for a particular purpose." Moffatt v. Fulton, 132 N. Y. 515, 30 N. E. 992. In the case at bar the defendant had provided for drawing the sum of $2,500 for use during his trip to Europe. He was at liberty to use the proceeds of his drafts in any way that he saw fit. He was not limited to any particular money for any particular purpose, and was only required to account to the plaintiff for the amount used by him, and not for the manner or purpose for which it was used. In Farrelly v. Hubbard, 84 Hun, 391, 32 N. Y. Supp. 440, it was held that an action for conversion could not be maintained against a person who receives money in a fiduciary capacity, that when money is received by the consent of another the legal obligation thus created is discharged by paying the debt, and that it is never necessary to repay the identical bills received. Upon appeal the court, without disputing the accuracy of the rule stated, reversed the judgment, upon the ground that the defendant in that case was the mere servant of the plaintiff and bound to immediately carry the money to the plaintiff. Farrelly v. Hubbard, 148 N. Y. 592, 43 N. E. 65. The omission to pay over money received as a factor, agent, or trustee in the course of the agency or trust will not lay the foundation for an action of trover. Harris v. Schultz, 40 Barb. 315; Morange v. Waldron, 6 Hun, 529. When the Mumford loan was repaid to the defendant, it was already charged to him in his account with the plaintiff.

The plaintiff urges that the defendant was limited to drawing money for his living expenses. This does not so appear. The defendant testified, and it was not disputed, that "I drew money for any purpose that I needed money for." It was also shown by two witnesses, without objection, that Bonsall had stated that the corporation had no particular arrangement with defendant regarding the salary to be paid him, that Platt "drew whatever he wanted," that he (Bonsall) "trusted him implicitly." While, perhaps, these statements of Bonsall are not binding upon the corporation, nevertheless they throw light upon the relations existing between the plaintiff, who was really and to all intents and purposes the creature of and owned and controlled by Bonsall and the defendant, and tend to show that the only relation existing between them in their business transactions was that of debtor and creditor.

The verdict was right, and should not have been set aside. Taking the evidence on the part of the plaintiff as true, it fails to show a cause of action for conversion.

Order reversed, and verdict reinstated, with costs. All concur.