### DERI et al. v. UNION BANK OF BROOKLYN.

(Supreme Court, Appellate Term.   January 14, 1910.)

1. BANKS AND BANKING (§ 130*)—RELATION BETWEEN BANK AND DEPOSITOR— DEBTOR AND CREDITOR.

   Where checks are lawfully deposited in a bank by a clerk of the payee, authorized to indorse the same to the bank, and the bank receives the proceeds, the relation between the bank and the payee is that of debtor and creditor, and the checks and proceeds may be credited by the bank to any person without altering its relations with the payee.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 323; Dec. Dig. § 130.*]

2. BANKS AND BANKING (§ 130*)—DEPOSITS BY AGENT—PAYMENT OF AGENT'S CHECKS.

   A bank, authorized to receive checks indorsed by the clerk of the payee by means of a rubber stamp, received checks with such indorsement and an additional indorsement signed in the clerk's name in ink. It received the proceeds of the check, and credited the same to the clerk's account, and then permitted the clerk to draw out the same. Held, that the bank was not guilty of converting the checks, for the additional indorsement did not prevent the bank from lawfully receiving the checks and the proceeds thereof.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 323; Dec. Dig. § 130.*]

3. BANKS AND BANKING (§ 130*)—DEPOSITS BY AGENT.

   A bank, authorized to receive checks indorsed by a clerk of the payee by means of rubber stamps reading, "Pay to the order of * * * [bank]," and the name of the payee, received checks containing in writing the name of the payee and the clerk, and the indorsement by means of the stamp, "Pay to the order of the" bank, and also received a check indorsed by the rubber stamp, "Pay to the order of" bank, and in writing the name of the clerk. It collected the proceeds of the checks, and credited the same to the clerk's account, and paid the same to the clerk. Held, that it converted the checks, for it was without authority to receive checks so indorsed.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 323; Dec. Dig. § 130.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. TROVER AND CONVERSION (§ 50*)—MEASURE OF DAMAGES—MITIGATION.

The measure of damages for the conversion of a check is prima facie the face value thereof, and the burden of proving facts in mitigation of damages is on defendant, and where some mitigation is shown, but the amount is indefinite, no sum can be deducted from the amount prima facie established.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. § 266; Dec. Dig. § 50.*]

5. APPEAL AND ERROR (§ 192*)—QUESTIONS REVIEWABLE—QUESTIONS NOT RAISED IN TRIAL COURT.

The appellate court will not entertain questions as to the pleadings, where no objection was made thereto at the trial, but will consider the cause of action disclosed by the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1223; Dec. Dig. § 192.*]

6. APPEAL AND ERROR (§ 183*)—QUESTIONS REVIEWABLE—QUESTIONS NOT RAISED IN TRIAL COURT.

Where, in an action for the conversion of checks, defendant did not raise in the trial court the question of the form of the action, though the evidence disclosed causes of action on implied contract on some of the checks, and causes of action for conversion of the others, and the measure of damages adopted was appropriate in an action. in assumpsit, the judgment would not be disturbed because of the wrong form of action as to some of the checks, except that interest would not be allowed on the checks on which defendant was liable in assumpsit, except from the date of demand of payment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1162; Dec. Dig. § 183.*]

Lehman, J., dissenting.

Appeals from Municipal Court, Borough of Manhattan, Seventh District.

Consolidated actions by Hermann Deri and another, composing the firm of Moritz, Kalmus & Neffen, against the Union Bank of Brooklyn. From five judgments for plaintiffs, defendant appeals. Modified and affirmed.

Argued before GIEGERICH, GOFF, and LEHMAN, JJ.

Edward M. Grout and Paul Grout (Chauncey E. Treadwell, of counsel), for appellant.

Walter J. Rosenstein, for respondents.

GOFF, J. Five appeals from as many judgments entered in the Municipal Court for the conversion of checks. The five actions were tried as one, under a stipulation by which it was also agreed that the oral testimony given might apply to all.

Plaintiffs are importers of and dealers in certain small articles, having their main office in Vienna, with a branch in New York City. In December, 1906, they opened an account in defendant's bank, then known as the Mechanics' & Traders' Bank. Plaintiff Klemperer remained in charge of the Vienna office; his partner, Deri, looking after the New York branch, but spending most of his time in Vienna. While absent from New York, the firm's office there was in charge of a clerk, Wilhelm, whose duties were to attend to sales and keep the books and deposit checks received from customers to the firm ac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

count. It was his practice, and he was authorized, in making such deposits, to indorse them by means of two rubber stamps; the imprint of one reading, "Pay to the order of Mechanics' & Traders' Bank," and that of the other, "Moritz, Kalmus & Neffen." He had no authority to sign the firm's name by pen, or to sign his individual name to any firm check, or to indorse checks in any other manner than as above stated.

In June, 1907, plaintiff Deri, being about to leave for Vienna, and wishing to arrange for payment of small expenses of the business through Wilhelm, opened an account for him in defendant's bank, subject to Wilhelm's check, and deposited, for that purpose, the sum of $200, at the same time explaining his purpose to the officers of the bank, and saying that he would send small checks to Wilhelm to keep the account up to about the figure at which it was opened. From this time, until about December 3, 1907, when Deri returned from Europe, Wilhelm made reports to the firm of his receipts and disbursements. Wilhelm left his employment soon after Deri's return, and has not since been heard from. It was then found that his reports were not accurate. It was also found that the bank had received 13 checks drawn to the firm's order, and now claimed to have been converted, and had placed them to Wilhelm's account. Nine are indorsed: "Pay to the order of Mechanics' & Traders' Bank. Moritz, Kalmus & Neffen. Pay to the order of Mechanics' & Traders' Bank. Robert Wilhelm." Three are indorsed: "Moritz, Kalmus & Neffen. Pay to the order of the Mechanics' & Traders' Bank. Robert Wilhelm." And one: "Pay to the order of the Mechanics' & Traders' Bank. Robert Wilhelm." Some of these indorsements were partly made by the rubber stamps, or one of them, and some were entirely indorsed by pen; but the name "Robert Wilhelm" was written on each check. The aggregate of these checks was about $2,000.

The bank received them so indorsed, and credited them, as shown by statements received in evidence, not to the firm account, but to that of Wilhelm, collected the proceeds, and, as appears by the bank statements in the record, paid out the proceeds, except for a trifling amount, on Wilhelm's order. None of the proceeds were received by plaintiffs, except that some part of the entire account, in an amount which is not shown, was used in payment of firm expenses. It does not appear that such amount was in excess of $200, which was kept on deposit in Wilhelm's name, in addition to the amount of the checks converted. Judgment has been entered against the bank for the full amount of these checks, with interest from the time of deposit, and costs in five actions. In crediting these deposits to Wilhelm's account, there can be no question but that the bank was in error. The question to be considered is the nature of that error, and whether it was a wrongful conversion of plaintiffs' property, or whether it merely created the relation between the parties of debtor and creditor.

An analysis of the relations of the parties to this action may be begun by considering, first, the checks indorsed: "Pay to the order of the Mechanics' & Traders' Bank. Moritz, Kalmus & Neffen. Pay to the order of the Mechanics' & Traders' Bank. Robert Wilhelm"— the indorsement having been made, except the name of Wilhelm, by

rubber stamps. If the name "Robert Wilhelm" had not appeared, that indorsement, by Wilhelm, would have been in an authorized form; and we will assume, for the present, that it did not appear. Making that assumption, Wilhelm had authority, and it was his duty, to deposit these checks, and that the bank had authority to receive them and to collect the proceeds. Upon receipt, title to the checks vested in the bank, as well as title to the proceeds. Thereafter the relation of the parties was that of debtor and creditor. It is immaterial whether or not some employé of the bank made an entry on its books placing them to the credit of the plaintiffs. The relation came into existence at the moment of deposit, just as it would have done had these deposits been made by plaintiffs in cash. The checks and their proceeds, being upon deposit, the property of the bank might lawfully be credited by the bank to any person it saw fit, without altering its relations with the depositor. Matter of Franklin Bank, 1 Paige, 249, 19 Am. Dec. 413.

How was this relation changed by the additional indorsement: "Pay to the order of the Mechanics' & Traders' Bank. Robert Wilhelm"? The direction of Wilhelm to the drawee to pay these checks to defendant bank was precisely that of the plaintiffs. In obeying Wilhelm's instructions in this particular, the bank was obeying the firm's instructions, and the instructions of both Wilhelm and the firm to the bank were to take the check, present it for payment, and receive the proceeds. However well calculated the second indorsement might have been to arouse the bank's suspicions, or whatever entries or payments it made after receipt of the check, it was authorized to receive it and present it for payment, and there was no unlawful interference with plaintiffs' property in so doing. If there was a conversion of these checks by the bank, when did it begin? Not upon credit of the amounts paid or payable thereon to Wilhelm's account, for the bank was entitled to make any credit that it thought best, irrespective of deposits from anybody; not upon payment of any checks drawn by Wilhelm on his own account, because it was entitled to pay any checks which he presented, whether an overdraft or not. It did not begin upon receipt of the firm's checks, because it was authorized to receive them; and not upon refusal of the firm's demand for the amount of these checks, because at that time the plaintiffs had no property or ownership in the proceeds of the checks. Innovation Trunk Co. v. Platt, 56 Misc. Rep. 645, 107 N. Y. Supp. 816.

Respondent cites, as precedents to sustain his contention that the proof sustains judgment in conversion, Rosenberg v. Germania Bank, 44 Misc. Rep. 233, 88 N. Y. Supp. 952, Schmidt v. Garfield Bank, 64 Hun, 298, 19 N. Y. Supp. 252, affirmed 138 N. Y. 631, 33 N. E. 1084, Johnson v. First National Bank, 6 Hun, 124, Saolomon v. State Bank, 28 Misc. Rep. 324, 59 N. Y. Supp. 407, and Adler v. Broadway Bank of Brooklyn, 30 Misc. Rep. 382, 62 N. Y. Supp. 402. But in none of these cases does it appear that the bank had authority to receive the check presented. In all of them it appeared that checks had been paid under forged or unauthorized indorsements by which title could not be acquired, and that the plaintiffs were suing stranger banks, with whom their relations were not that of debtor and creditor.

Three of the checks in suit are indorsed: "Moritz, Kalmus & Neffen. Pay to the order of Mechanics' & Traders' Bank, Robert Wilhelm"—the firm and individual signatures being written, and the rest of the indorsements stamped. One of these checks, for $189, is in suit in action No. 3; and two in action No. 5, one for $201.19 and one for $75.95. Wilhelm had no authority to indorse in blank, or otherwise than by the use of the two rubber stamps. The bank had no authority to receive checks indorsed as these were, yet it did receive them, did not credit the amounts to plaintiffs, did pay the amounts to Wilhelm, and has refused to pay the amounts to plaintiffs or to return the checks. There was, in those acts of the bank, that unauthorized appropriation which constitutes conversion. The appellant points out that there is no evidence when the indorsements were made, or that the signatures were made by Wilhelm. Whoever made those signatures made them without authority, and if no indorsements were on those checks when received the bank had no authority to receive them. The bank treated these irregularly indorsed checks precisely as it did those indorsed in the authorized manner; but the effect was different. In the one case the bank obtained title, and in the other it did not obtain title, until the plaintiffs exercised their election to treat the unauthorized act as a conversion. That election having been made by these suits, it is now impossible to treat the relation between the parties, created by receipt of these checks, as that of debtor and creditor.

There is also a check in suit in action No. 1 for $38.05, which is indorsed by a rubber stamp, "Pay to the order of Mechanics' & Traders' Bank," and in writing, "Robert Wilhelm." The indorsement being unauthorized, receipt for deposit was likewise unauthorized; the result being that an action for conversion of this check is well founded.

Appellant contends that the award of damages is excessive. It points out that there is some evidence that money from Wilhelm's account was used to pay firm expenses, the exact amount of which is unknown, and argues that, as it has not been ascertained what that amount is, nor how much of it came from the converted checks, it was error to award damages in any but a nominal amount. Prima facie, the measure of damages for conversion of a check is its face value. The burden of proof to show facts in mitigation of damages is on defendant. Atkinson v. Rochester Printing Company, 43 Hun, 167; Griggs v. Day, 136 N. Y. 152, 32 N. E. 612, 18 L. R. A. 120, 32 Am. St. Rep. 704. If some mitigation be shown, but the amount be indefinite, no sum can be deducted from the amount established prima facie.

But, though judgments in conversion cannot be sustained on 9 of the 13 checks in suit, it does not follow that they must be reversed, or must be modified by deducting the amounts of those checks. Appellant has questioned the form of action for the first time on appeal. It was not raised in the trial court, except that defendant moved to dismiss as to the three notes indorsed in blank, which are the three of the four notes now held to have been converted; the ground of its motion being that no cause of action had been shown. The appellate court will not entertain questions as to the pleadings, when no

objection has been made thereto at the trial, but will consider the cause of action disclosed by the evidence. Knapp v. Simon, 96 N. Y. 284, 292; Moffatt v. Fulton, 132 N. Y. 507, 30 N. E. 992.

The evidence discloses causes of action on implied contract, in the case of the nine notes held not to have been converted. The judgment entered, and the measuré of damage adopted, are appropriate to actions in assumpsit, and the question of the nature of the relations of the parties, created by deposit of all the checks, becomes material here only as bearing upon the question of interest, which has been awarded from the date of deposit, and rightly so as to the four checks which were converted, because the conversion took place at the moment of deposit. But it is conceded that, if the bank had honored plaintiffs' demand at the time it was made, no interest would be due. Witness Deri said, in answer to a question by the court, that plaintiffs made demand for their checks or the proceeds "before this action," sc that interest on the nine checks should be computed only from date of service of summons, and the judgments should be modified accordingly.

Judgment in action No. 1 is modified, by reducing the same to the sum of $464.05, and, as modified, affirmed, with costs of the appeal.

Judgment in action No. 2 is modified, by reducing the same to the sum of $474.57, and, as modified, affirmed, without costs.

Judgment in action No. 3 is modified, by reducing the same to the sum of $433.87, and, as modified, affirmed, without costs.

Judgment in action No. 4 is modified, by reducing the same to the sum of $386,26, and, as modified, affirmed, without costs.

Judgment in action No. 5 is modified, by reducing the same to the sum of $398.37, and, as modified, affirmed, without costs.

GIEGERICH, J., concurs.

LEHMAN, J. (dissenting). The plaintiffs herein are suing for conversion of checks by the defendant bank. The issue tendered by the pleadings was whether the defendant bank had title to these checks. The plaintiffs' bookkeeper had no authority to use the proceeds of these checks; but concededly he not only had authority, but it was his duty, to deposit these checks to the plaintiffs' credit in the defendant bank. Concededly, too, he had authority, and it was his duty, to indorse these checks to the bank by means of two rubber stamps. When he did so, the bank received title to these checks, and became a debtor to the plaintiffs for the amount received upon them; but failure to credit this amount could not make the defendant liable for conversion. While this is more clearly true of the checks which were indorsed by the bookeeper by means of the rubber stamps, I think that it is also true of the cases where the bookkeeper signed the indorsement in the firm name in his own handwriting, instead of with a rubber stamp. The bank knew that the bookkeeper was in charge of the plaintiffs' office, and that he was permitted to indorse checks and deliver them to it, although not permitted to indorse checks to other persons. In indorsing these checks he was acting within the scope of his authority, and the fact that he signed the plaintiffs' name with pen

and ink, instead of with a stamp provided for that purpose, is immaterial. He was authorized and directed to transfer title to the defendant, and in receiving the checks the defendant committed no tort, and in no wise failed in its duty to the plaintiffs. It certainly had no right, however, to credit these checks to any person other than the plaintiffs, and the plaintiffs are in no wise bound by such unauthorized credit. The defendant has received the money, and is bound to return this money to them, and the plaintiffs are entitled to bring an action against the defendant for money had and received.

They have, however, not brought this action; but they have tendered the issue of title to these checks, and they have failed to sustain this issue, and the complaint should have been dismissed. Even if the defendant had not raised this point in the court below, I am doubtful of our right now to amend the pleadings to conform to the proof, where such an amendment would change the nature of the cause of action from tort to contract. I think, however, that the defendant raised this point in its motion to dismiss, although its attorney has not stated this ground as clearly as he might have done. It was certainly stated sufficiently clearly to bring the matter before the trial justice. His opinion begins with the words, "These actions are properly brought for conversion," and he then proceeds to discuss the question of whether there has been a conversion in an argument that is so careful and clear that I have only reluctantly reached the opposite conclusion. Having, however, reached this conclusion, I feel that we are bound to reverse the judgment and order a new trial.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.