PLATT v. BONSALL et al.

(Supreme Court, Appellate Division, Second Department. February 17, 1911.)

1. MALICIOUS PROSECUTION (§ 25*)—PROBABLE CAUSE—WHAT CONSTITUTES.
    Plaintiff was president of a corporation owned by defendant B., and managed the same under an agreement for a drawing account for his living expenses, and for compensation for his services. B. directed plaintiff to loan $500 to M., and also to advance money to certain women who re-

turned with plaintiff from Europe. This he did out of the proceeds of a letter of credit obtained from the money of the corporation, charging himself with the amount of the checks drawn against the letter of credit, and crediting himself with the expenses. Plaintiff collected the money loaned to M., and also that advanced to the women, and kept the same, so far as the books showed, though it did appear that he had charged himself therewith in the sense that the money was included in the entries made in his individual account, though there was no entry setting forth the transactions in fact. B., after consulting an attorney, was advised to bring suit for conversion, on which plaintiff was arrested and imprisoned for 24 hours. *Held*, that such facts constituted probable cause as a matter of law, and that defendants were not liable for malicious prosecution.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 56–58; Dec. Dig. § 25.*]

2. MALICIOUS PROSECUTION (§ 59*)—EVIDENCE—RELEVANCY.

Where, in an action for malicious prosecution in causing plaintiff's arrest in connection with an action for conversion of certain funds belonging to a corporation, controlled by defendant B., of which plaintiff was president and manager, evidence of the judgment roll and judge's charge, in an action in the federal court, by plaintiff against defendants, in which plaintiff successfully recovered a large verdict for services rendered, was irrelevant.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 125–137; Dec. Dig. § 59.*]

3. MALICIOUS PROSECUTION (§ 59*)—EVIDENCE.

In an action for malicious prosecution of plaintiff for conversion of money alleged to belong to a corporation, in which plaintiff was manager, the stock of which was almost entirely owned by defendant B., evidence that B. had drawn profits from the corporation amounting to $55,000 during plaintiff's connection therewith was inadmissible.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 125–137; Dec. Dig. § 59.*]

Appeal from Trial Term, Westchester County.

Action by Arthur C. Platt against Seymour W. Bonsall and another. From a judgment for plaintiff and from an order denying defendants' motion for a new trial, they appeal. Reversed, and new trial granted.

See, also, 136 App. Div. 397, 120 N. Y. Supp. 983.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

H. V. Rutherford, for appellants.

Robert B. Honeyman, for respondent.

THOMAS, J. The plaintiff has recovered judgment for damages for malicious prosecution of an action brought by the Innovation Trunk Company at the instance of Bonsall for the alleged conversion of money by Platt. Bonsall, a manufacturer of trunks, employed Platt in 1899, and in March, 1900, transferred his business to the Innovation Trunk Company, of which he was sole owner of the stock save two qualifying shares issued to Platt and another. Platt was president, treasurer, and a director, and came into entire active charge of the business, reporting to, and advising with, Bonsall. The parties arranged that Platt should have a drawing account for his living expenses, the increasing amount of which was encouraged by Bonsall,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and it was further agreed that Platt should be properly compensated for his services, and upon indebtedness so arising Platt recovered a judgment in the federal court. In August, 1903, Bonsall summoned Platt to England, and the latter obtained from Brown Bros. & Co. a credit letter authorizing any foreign office to honor Platt's drafts to the amount of $2,500. These drafts were paid by checks signed by Platt before going to Europe, and left with the bookkeeper at the home office, and paid from the bank account of the corporation and charged on its books to Platt. This arrangement was authorized. While in London, Bonsall directed Platt to draw and lend $500 to one Mumford, and also to advance money for some women who returned with Platt. Platt did as directed, and in due course the money so advanced was charged to Platt pursuant to the method above stated. During the voyage Platt collected $300 from the women, and after his return collected $500 from Mumford, and kept both sums. Later Bonsall returned, and caused Platt to resign and separate from the company. Bonsall by letter asked Platt for a detailed statement of his expenses incurred on the European trip, but, as appears by the letter of his counsel, did not receive it. Platt advised Bonsall that the women had repaid him. Platt's account on the books did not specifically show that the moneys advanced to Mumford and the women had been charged to him, but did show a debit of the checks drawn, which included the money loaned. The action for conversion was in the City Court. A verdict for defendant was set aside, but the Appellate Term restored the verdict, and final judgment followed. Upon an order of arrest Platt was confined for some 24 hours.

In the complaint Platt was charged with converting other moneys than those above stated, but upon the trial all claims seem to have been abandoned save that relating to the money repaid by Mumford. Did Bonsall have probable cause for believing that Platt had converted this money? Platt testified:

"Q. What is your justification then? A. That the drafts had been charged against my account, and were on the books charged against me. I needed the money to pay whatever expenses I incurred."

He also testified:

"Q. Had you ever before, Mr. Platt, during your connection with the company, collected moneys to that amount which you had not turned in? A. I never had; no."

It further appears that he always drew money by the company's check or from the petty cash, and that it was charged to him. The money loaned Mumford was at Bonsall's risk. He or the company was the creditor for it. Although Platt obtained it for loaning from his letter of credit, and so it entered into some of the drafts paid and charged to him, that was a mere matter of bookkeeping. He was entitled to a credit against all the money paid out by him by reason of the necessary expenses of his European trip, and certainly for money loaned upon Bonsall's direction. It follows that, when he received the money from Mumford, it belonged to the company, and it was his duty to turn it in to the company's bank. He justifies upon the ground that it was charged against him. But surely he does not

mean that the loan was at his risk. His conception is that, when he received the money, he could keep it for expenses, and thereby offset the charge against him on the books. With his liberal powers, he had never before kept collected money, and nothing in his authorization respecting the company's business, however arising, contemplated such an act. It was his duty to pay in the collections, have the same appear regularly on the books, and then withdraw by check and have the amount carried on the books. It is true that what he drew equals what was charged as regards Mumford's debt. It may be that nothing would have been lost. But what business concern would countenance such balancing of obligations? This is not a question of an equitable accounting, but of the title to money. Bonsall knew that Mumford owed $500. He had the right to have his books show the transaction of payment and deposit of the money in the company's bank. Instead of that, Platt collected it and kept it. That was the first and last of the matter. No explanation by Platt by word or by writing was given. Advised by his counsel, Bonsall sued in conversion.

Were the facts, real or apparent, strong enough to justify a reasonable man in the belief that he had lawful grounds for prosecuting the defendant for conversion? If so, there was probable cause. Burt v. Smith, 181 N. Y. 1, 73 N. E. 495. Bonsall found Mumford's debt paid and the money carried away by Platt, with no history on his books except a debit against Platt for several drafts based on the credit letter, for which Platt was entitled to a credit. In his entire service Platt had not exercised similar dominion over money. What could Bonsall in reason believe? How could he fail to believe that Platt had taken what did not belong to him? Assume that Platt intended no wrong, that he thought that his taking the money would be equivalent to crediting himself with the like amount on the books. That would not give him title to the money. The absence of wrongful intention does not acquit him of the tort. Industrial & General Trust v. Tod, 170 N. Y. 245, 63 N. E. 285. Moreover, the evidence does not show for what allowable expense he used the money. His attempt to account for it largely failed. I have not considered the $300 received in payment of the women's debt. He had for Bonsall's account loaned them a larger sum, but testified that the women had loaned him for his expenses, and the matter was adjusted. Even so, I find no authority to retain the $300. Bonsall also alleged conversion of money Platt had drawn to defray the expenses of his aunt's funeral. His conduct in that matter may not be beyond criticism, but he did not convert the money. However, it is enough that Bonsall was justified as to the Mumford payment and the money returned by the women. The jury found that there was no conversion, but that does not preclude this court from deciding that the facts as they were presented to Bonsall, and, as he believed them to be, furnished reasonable cause for bringing action for conversion, as he was advised by counsel to do. Willard v. Holmes, Booth & Haydens, 142 N. Y. 492, 37 N. E. 480. In my judgment, he was amply justified in pursuing the remedy, and the motion for nonsuit should have been granted.

The judgment roll and judge's charge in the federal court action were received in evidence. I consider that no issuable fact determined favorably to the plaintiff in that action was relevant to any fact in issue in the present action. It is difficult to conceive that the jury would not have been influenced by a determination that Bonsall was wrong and Platt right in a contention that Platt had been so influential in his service in building up the business as to entitle him to the large verdict rendered, based upon a contract to pay therefor alleged by one party and denied by the other. The respondent in his present argument urges that the previous judgment was relevant, and it is presumable that he made use of it upon the trial for influencing the jury. It will be observed that the plaintiff is not content to excuse the admission upon the ground that the evidence was harmless, but insists in addition with vigor that as an adjudication it solves some issues now present. How then can he urge that it was ineffective in operating upon the minds of the jurors? The only issue present as regards liability is whether the defendant had reasonable ground to believe that the plaintiff took and kept without authority money collected for the defendant, and, unless the former judgment is competent on that issue, its reception was hurtful error. I consider its admission a ground for reversal.

The court also allowed plaintiff to prove the profits, amounting to $55,000, drawn from the business by Bonsall during Platt's connection with it. This is defended upon the ground that it illustrated the right of Platt to draw whatever he did, and that the jury might rightfully infer that Bonsall, who realized such profit out of another's labors, and then hastened to put such other person in jail "on an unwarranted suspicion that he had embezzled a few hundreds, was of a mean and malicious character." It is evident that the evidence tended and was used to influence the passion of the jury; and that it did so cannot be doubted. The plaintiff had a right to draw for his expenses, and it was not expected or desired that he would be self-denying in his way of living. But the profits were not his own, and he was not permitted to adjust his scale of living to profits belonging to his employer. He could draw up to a limit, and that limit was what he needed for his support, and Bonsall encouraged liberality in his expenditures. I regard the evidence as incompetent and harmful.

The judgment and order should be reversed and a new trial granted, costs to abide the event. All concur.